IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN POPOVICH, | Case No. 1:02 CV 359 |
| Plaintiff, | Judge Solomon Oliver |
| THE POPOVICH MUSIC GROUP, LTD., | |
| New-party Plaintiff | Magistrate Judge Baughman |
| v. | **Amended Complaint** |
| SONY MUSIC ENTERTAINMENT, INC., | |
| Defendant. | |

Plaintiff Stephen Popovich ("Popovich") and New-Party Plaintiff The Popovich Music Group Ltd. (collectively, "Plaintiffs"), on behalf of themselves and as successors-in-interest to the recording label Cleveland International Records, for their Amended Complaint against Defendant Sony Music Entertainment, Inc. ("Sony"), state as follows:

## NATURE OF ACTION

1.  This is an action for legal and equitable relief in the form of damages, including compensatory and punitive damages, declaratory relief and/or specific

performance arising out of Sony's intentional, malicious and fraudulent conduct in connection with: Sony's distribution of various embodiments of four albums popularly known as "Bat Out of Hell," "Dead Ringer," "Midnight at the Lost and Found," and "Hits Out of Hell," (collectively "the Albums") as well as the master recordings originally embodied on the Albums (collectively "the Meatloaf Master Recordings"); the negotiation and settlement of a certain case styled *Cleveland Entertainment Co., Inc. v. Sony Music Entertainment, Inc. and CBS Records, a Division of CBS, Inc.*, Cuyahoga County Court of Common Pleas Case No. 295530, which involved, *inter alia*, claims relating to the Meatloaf Master Recordings (the "Lawsuit"); and Sony's breach of the parties' various contracts, including but not limited to a Settlement Agreement dated February 17, 1998 (the "Settlement Agreement").

## JURISDICTION AND VENUE

3.      Popovich is an individual residing within the Northern District of Ohio, Eastern Division, and is the successor-in-interest to the Cleveland International Records recording label.

4.      The Popovich Music Group Ltd. is a Limited Liability Company formed under Chapter 1705.04 of the Ohio Revised Code, having its principal place of business within the Northern District of Ohio, Eastern Division.

5.      Sony is a corporation organized under the laws of the State of Delaware, having its principal place of business in New York, New York.

6.  At all relevant times, Sony has regularly transacted substantial business within the State of Ohio and has otherwise had and continues to have substantial contacts with the State of Ohio.

7.  This Court has jurisdiction over this action because there is complete diversity of citizenship between the parties, and the sum in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction because certain of Plaintiff's claims arise under federal law, namely the Lanham Act. This Court has pendent jurisdiction over Plaintiff's claim arising under state law.

8.  Venue lies in this district under 28 U.S.C. § 1391(b).

## POPOVICH AND CLEVELAND INTERNATIONAL RECORDS

9.  Popovich was the youngest VP/Promotion at CBS/Columbia Records (now Sony), and the first recipient of that company's prestigious Clive Davis award for promotion. As VP/A&R at CBS/Epic (now Sony), he and his staff signed acts such as Boston, Wild Cherry, Ted Nugent, Michael Jackson, The Jacksons, The Charlie Daniels Band and REO Speedwagon. He was responsible for CBS, and its successor, Sony, having three of the four all-time biggest selling albums in the world. At CBS/Epic, Popovich signed Boston and the group's debut album ranks #4 on the top-seller list. Meatloaf's Bat Out Of Hell (which was released in conjunction with CBS on the Cleveland International Records/Epic (now Sony) label) has sold in excess of 30 million, and Michael Jackson's Thriller has sold in excess of 43 million. Due to his accomplishments, Popovich was

named one of Cleveland's 25 most influential natives, along with figures such as Henry Mancini, Phil Donohue, Paul Newman and Bob Hope; Popovich was recognized for his abilities as a Grammy-winning producer, talent scout and record executive.

10. Cleveland Entertainment Co., Inc. ("Cleveland") was a corporation formed by Popovich, organized under the laws of the State of New York that, during its period of active operation, had its principal place of business in Cleveland, Ohio. Popovich was the majority shareholder of Cleveland Entertainment Co., Inc., owning 51% of its stock. Through Cleveland Entertainment Co., Inc., Popovich originated, established and promoted "Cleveland International Records" as a trade name and a recognized and respected recording label.

11. After the dissolution of Cleveland Entertainment Co., Inc., Popovich retained the rights to use the Cleveland International Records trade name and label. "Cleveland International Records" is a registered trade name, currently registered with the Ohio Secretary of State to the Popovich Music Group, a company Popovich formed as an Ohio Limited Liability Company after the dissolution of Cleveland Entertainment Co., Inc. Popovich and The Popovich Music Group have been releasing and continue to release and distribute a wide variety of musical recordings, including heritage, alternative and country music, under the Cleveland International Records label.

## **PLAINTIFFS' RELATIONSHIP WITH CBS AND SONY**

12.  On or about January 1, 1977, Cleveland Entertainment Co., Inc. entered into a written agreement with CBS Records, a division of CBS, Inc. ("CBS"). As pertinent to this action, this agreement was thereafter modified and extended on August 11, 1977; September 1, 1979; and September 10, 1979. This agreement, as modified, is referred to herein as the "Cleveland-CBS Agreement." The Cleveland-CBS Agreement is not attached because it is voluminous, and has been the subject matter of previous litigation. A copy will be filed with the Court upon request by the Court or agreement of the parties.

13.  The Cleveland-CBS Agreement provided, *inter alia*, that Cleveland would deliver to CBS master recordings ("Masters") featuring artists under contract to Cleveland, and CBS would manufacture, distribute and sell records and tapes derived from the masters throughout the world.

14.  On or about August 15, 1977, Cleveland entered into a written agreement with Meatloaf Enterprises, Inc. ("MEI") pursuant to which MEI agreed to provide to Cleveland the services of Meatloaf as an exclusive recording artist. This agreement was thereafter modified on February 12, 1980. This agreement, as modified, is referred to herein as the "Cleveland-MEI Agreement." A copy of the Cleveland-MEI Agreement is not attached because it is voluminous, and has been the subject matter of previous litigation. A copy will be filed with the Court upon request by the Court or agreement of the parties.

15.  Sony is the successor in interest to CBS insofar as it relates to the Cleveland-CBS Agreement and the claims and allegations set forth herein.

## THE MASTER RECORDINGS

16. Pursuant to the Cleveland-CBS and Cleveland-MEI Agreements, CBS, and Sony as its successor, obtained the right to distribute certain recordings embodying performances by Meatloaf. This included recordings embodied on an album entitled "Bat Out of Hell," which has had and continues to have phenomenally successful sales throughout the United States and the rest of the world. This also included recordings embodied on albums entitled "Dead Ringer," "Midnight at the Lost and Found," and "Hits Out of Hell," which have had similarly successful sales. As referenced above, the master recordings from these four Albums are referred to herein as the Meatloaf Master Recordings. Sony has paid and continues to credit and/or pay royalties to Popovich for his role in the production of the Meatloaf Master Recordings.

17. The Meatloaf Master Recordings have been re-released on literally hundreds of releases, including but not limited to various compilations and anthologies, such as "Classic Rock 70's" and "The Best of Love", which contain Meatloaf Master Recordings along with masters by other artists, produced under other labels, such Phil Collins (produced by Atlantic Records), Rod Stewart (produced by Mercury Records) and The Righteous Brothers (produced by Curb Records). These releases are referred to herein as "the Releases". Sony's royalty reports to Popovich document the existence of over 700 Releases.

18. By virtue of the parties' agreements and statutory and common-law principles applicable to the relationship among the parties, at all pertinent times CBS and Sony, CBS's successor in interest, agreed and were obligated to act in

good faith in their distribution of the Meatloaf Recordings. Among other things, they were obligated to fully disclose all distribution and sales of any of the Meatloaf Master Recordings, including but not limited to any Releases, to properly account for royalties owed on the Meatloaf Master Recordings, and to properly and accurately give production credit to the Cleveland International Records label in the production, distribution and licensing of the Meatloaf Master Recordings.

19. Plaintiff has been at all pertinent times and is so situated, pursuant to the Cleveland-CBS Agreement and statutory and common-law principles, that it must rely on the good faith and integrity of Sony in connection with the commercial exploitation of the Meatloaf Master Recordings, as governed by the Cleveland-CBS Agreement, and in particular Sony's manufacture and design of the Albums and the Releases, and its placement of the Cleveland International Records label. As a result, a fiduciary relationship has existed and still exists between Plaintiff and Sony, and Sony has been at all pertinent times, and is, under a duty to act in the highest good faith toward Plaintiff, including a duty to disclose pertinent information to the Meatloaf Master Recordings, the Albums and the releases, and not to take any advantage of Plaintiff in properly crediting Popovich for royalties and providing proper and accurate production credit with regard to the Meatloaf Master Recordings.

## THE LAWSUIT AND THE SETTLEMENT

20. Popovich and others filed the Lawsuit against Sony, among others, based on allegations of fraud, breach of fiduciary duty, breach of contract, unjust enrichment, and violations of the RICO statute, 18 U.S.C. § 1961, *et seq.*

21. On or about March 5, 1998, the Court of Common Pleas, Cuyahoga County, Ohio ordered the Lawsuit dismissed with prejudice based on the parties' submission styled Stipulation of Dismissal With Prejudice (the "Order").

22. The parties agreed to the entry of the Order as a term and condition of a Settlement and Release Agreement entered into by the parties on or about February 17, 1998 (the "Settlement Agreement"). The parties further agreed to keep the terms and conditions of the Settlement Agreement confidential as part of the consideration for entering into the Settlement Agreement. (A copy of the Settlement Agreement is not attached based on the confidentiality provision therein, but has been sent to the Court in correspondence relating to discovery and will be filed under seal upon request of the Court or agreement of the parties.)

23. At the time the Settlement Agreement was executed, Sony had already distributed millions of copies of the Meatloaf Master Recordings, including but not limited to approximately 9.5 million copies of a "Bat Out of Hell" CD without the Cleveland International Records logo; all production credit was given to Sony or Epic, Sony's own recording label.

24. Pursuant to the Settlement Agreement, Sony agreed to provide Popovich proper production credit by adding the Cleveland International Records logo to all

forms and configurations of the master recordings embodied on the Albums manufactured after September 1, 1998 in a manner set forth in the Settlement Agreement (the "Labeling Requirements"). The Labeling Requirements were essential consideration for Popovich in entering into the Settlement Agreement. This portion of the Settlement Agreement was added only as a result of Popovich's demands, and he refused to agree to any settlement unless this provision was added.

25. On information and belief, Sony never intended to fully comply with the Settlement Agreement and perform the Labeling Requirements with regard to the release of the Meatloaf Master Recordings, including but not limited to releases of the "Bat Out of Hell" album. Sony thus fraudulently induced Plaintiff into entering the Settlement Agreement based on misrepresentations that it would adhere to the Labeling Requirements.

26. Sony did not comply and still refuses to comply with the Labeling Requirements. Among other things,

    a. Sony manufactured at least 182,493 copies of a Bat Out Of Hell CD that omit the Cleveland International Records logo altogether between September 1, 1998 and September 30, 1999:

    b. Sony manufactured at least 209,556 copies of a "Bat Out of Hell" CD between October 1, 1999 and September 30, 2000 that fail to meet the Labeling Requirements inasmuch as they carry only the Epic logo and omit the Cleveland International Records logo from the CD itself.

    c.    Sony manufactured at least 1,045 copies of a "Dead Ringer" CD between October 1, 1999 and September 30, 2000 that fail to meet the Labeling Requirements inasmuch as they omit the Cleveland International Records logo from the CD itself.

    d.    Sony has licensed, manufactured and/or distributed an unknown quantity CD's titled "the Best of Love" and "Classic Rock 70's" that provide proper production credit to other producers, but omit the Cleveland International Records logo altogether and give Sony and/or its Epic recording label sole production credit for the Meatloaf Master Recordings embodied therein.

    e.    Plaintiff believes, and therefore avers, that Sony has licensed, manufactured and/or distributed an unknown quantity of other Releases that fail to give proper production credit for the Meatloaf Master Recordings embodied therein and/or omit the Cleveland International Records logo altogether.

27.    Sony has refused and continues to refuse to disclose to Popovich how many Releases are in existence, how many copies of such releases have been manufactured and sold, and whether the Releases provide proper production credit or otherwise meet the Labeling Requirements.

28.    Sony has refused and continues to refuse to allow Popovich to have access to other information relating to the Releases in connection with a routine audit of Sony's records, which Popovich has a separate and independent right to conduct in connection with his rights to royalty payments.

## COUNT ONE
### (Reverse Passing Off)

29. Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 26 of this Complaint as if fully rewritten herein.

30. This claim applies to Sony's actions both before and after September 1, 1998, which is the deadline by which Sony was required to meet the Labeling Requirements provided for in the Settlement Agreement. Sony's failure to adhere to the Labeling Requirement estops Sony from relying on the release from liability contained in the Settlement Agreement, and allows Plaintiffs to seek damages for Sony's actions and omissions before the September 1, 1998 deadline.

31. Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), forbids the use of "false designations of origin and false descriptions or representations in the advertising and sale of goods and services."

32. Ohio Revised Code §4165, *et seq.* (Ohio Deceptive Trade Practices Act) forbids passing off goods or services "as those of another."

33. N.Y. General Business Code §349 forbids the use of deceptive acts and practices in the conduct of business, trade or commerce.

34. Sony has designed, licensed, manufactured and distributed for sale various forms and configurations of the Meatloaf Master Recordings, all of which were embodied on the Albums, including but not limited to the "Bat Out of Hell" album, in a manner that fails to provide proper production credit, and/or omits the Cleveland International Records recording label altogether.

35. Sony's failure to give proper production credit and/or omission of the Cleveland International Records label has resulted in a material misbranding of releases containing the Meatloaf Master Recordings.

36. Sony has manufactured and distributed, and allowed its licensees to manufacture and distribute millions of copies of releases containing the Meatloaf Master Recordings throughout the United States as well as internationally without providing proper production credit and/or omitting the Cleveland International Records label.

37. Sony's actions are likely to cause public confusion and have caused actual confusion regarding the source and origin of the "Bat Out of Hell" album as well as the other Meatloaf Master Recordings.

38. Sony's actions are likely to deceive and have actually deceived the public regarding the source and origin of the "Bat Out of Hell" album as well as other Meatloaf Master Recordings.

39. As a direct and proximate result of Sony's actions, Plaintiffs have been deprived of extensive and valuable good will, public relations and advertising that otherwise would stem from public knowledge of the true source of the "Bat Out of Hell" album and the Meatloaf Master Recordings.

40. As a direct and proximate result of Sony's actions, Sony has unfairly and unjustly profited from the false perceptions it has created concerning its own role (or the role of its Epic recording label) in the production and distribution of the "Bat Out of Hell" album and the Meatloaf Master Recordings.

41. As a direct and proximate result of Sony's actions, Plaintiffs have suffered direct and consequential monetary damages, the amount of which are currently estimated to exceed $1,000,000.

42. Plaintiffs are entitled to monetary damages from Sony for their own direct and consequential damages, including lost profits and good will, to disgorgement of Sony's improper profits, and the costs of this action, including attorney fees.

43. Plaintiffs are entitled to injunctive relief requiring Sony to provide proper production credit and include the Cleveland International Records label on all forms and configurations of any release that contains or includes any of the Meatloaf Master Recordings.

## COUNT TWO
### (Fraud)

44. Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 41 of this Amended Complaint as if fully rewritten herein.

45. Sony made false and fraudulent misrepresentations to Popovich regarding its willingness and intent to perform the Labeling Requirements contained in the Settlement Agreement in order to induce Popovich to settle and seek court approval of a dismissal with prejudice of the Lawsuit.

46. Popovich justifiably relied upon the false and fraudulent misrepresentations of Sony.

47. Popovich suffered and continues to suffer substantial injury as a result of Sony's fraudulent conduct.

48. Sony acted maliciously, willfully and with gross and wanton disregard of Popovich's rights and interests and the power of the court, by reason of which Sony is liable to Popovich for compensatory and punitive damages in an amount to be determined at trial sufficient to deter future similar conduct by Sony.

## COUNT THREE
### (Breach of Contract)

49. Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 46 of this Complaint as if fully rewritten herein.

50. Sony has breached its obligations under the terms of the Settlement Agreement by failing to perform the Labeling Requirements of the Settlement Agreement and the terms of the Cleveland-CBS Agreements by failing to provide proper production credit and/or omitting Cleveland International Records logo from the "Bat Out of Hell" album and other releases of the Meatloaf Master Recordings.

51. Plaintiff Popovich has fulfilled all obligations imposed upon him by the terms and conditions of the Settlement Agreement and the Cleveland-CBS Agreement.

52. As a direct consequence of Sony's continued breach of the Settlement Agreement and the Cleveland-CBS Agreements, Popovich has incurred, is incurring and will continue to incur substantial damages.

## COUNT FOUR
## (Rescission - Specific Performance)

53. Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 50 of this Amended Complaint as if fully rewritten herein.

54. Sony's above-described breaches and fraudulent conduct toward Popovich were so material and egregious that they violate the essence of the Settlement Agreement and defeat the object and purpose of the parties in entering into same.

55. As a result of the foregoing, there has been a failure of consideration on the part of Sony, as a result of which enforcement of the Settlement Agreement and Order, including but not limited to those portions of the Settlement Agreement that release or may release Sony from liability for the claims asserted herein, would be unconscionable.

56. Plaintiffs are entitled to an Order requiring Sony to fulfill its contractual obligations as they relate to production credit and the Labeling Requirements.

57. Plaintiffs do not have an adequate remedy at law for the injuries they continue to suffer as a result of Sony's conduct. Accordingly, Plaintiffs will suffer irreparable harm if equitable relief is not granted.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiffs request judgment against Sony Music Entertainment, Inc. as follows:

A. As to Count One, for damages in an amount in excess of $75,000 to be determined at a trial of this action, plus interest, costs, and reasonable attorney fees together with injunctive relief requiring Sony to provide proper production credit and include the Cleveland International Records label on all forms and configurations of any release that contains or includes any of the Meatloaf Master Recordings;

B. As to Count Two, for compensatory damages in an amount in excess of $75,000 to be determined at trial of this action, plus interest, costs, and reasonable attorney fees, plus punitive damages in an amount sufficient to deter Sony from fraudulently entering into settlement agreements and other sharp practices;

C. As to Count Three, for compensatory damages in an amount in excess of $75,000 to be determined at trial of this action, plus interest, costs, and reasonable attorney fees;

D. As to Count Four, for a declaration rescinding the Settlement Agreement and vacating the Order, including but not limited to those portions of the Settlement Agreement that release or may release Sony from liability for the claims asserted herein, together with an order directing Sony to immediately and specifically perform the Labeling Requirements and comply with the Cleveland-CBS Agreement insofar as it relates to production credit; and

E. For such other relief favorable to Plaintiff that this Court deems just, equitable and proper.

Respectfully submitted,

David B. Webster (0053411)
E-mail: dbw@websterlaw.com
Craig P. Kvale (0055315)
E-mail: cpk@websterlaw.com
Steven C. Polly (0070473)
E-mail: scp@websterlaw.com
Laura E. O'Neill (0072704)
E-mail: leo@websterlaw.com
WEBSTER & WEBSTER LLP
1220 W. 6th Street, Suite 600
Cleveland, Ohio 44113
(216) 566-1144 Telephone
(216) 566-1221 Facsimile

## JURY DEMAND

Plaintiff demands a jury trial in this action by the maximum number of jurors permitted by law.

Respectfully submitted,

_____
David B. Webster (0053411)
  E-mail: dbw@websterlaw.com
Craig P. Kvale (0055315)
  E-mail: cpk@websterlaw.com
Steven C. Polly (0070473)
  E-mail: scp@websterlaw.com
Laura E. O'Neill (0072704)
  E-mail: leo@websterlaw.com
WEBSTER & WEBSTER LLP
1220 W. 6th Street, Suite 600
Cleveland, Ohio 44113
(216) 566-1144 Telephone
(216) 566-1221 Facsimile

Attorneys for Plaintiffs
 Stephen Popovich and
 Popovich Music Group LTD.