UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN POPOVICH, *et al.*, | ) | Case No.: 1:02 CV 359 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| SONY MUSIC ENTERTAINMENT, INC., | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending before the court are motions by Defendant Sony BMG ("Sony" or "Defendant") to exclude three of Plaintiffs' Stephen Popovich and Popovich Music Group's ("Popovich" or "Plaintiffs") expert witnesses from testifying at trial. (ECF Nos. 265, 267, 268.) The court held a hearing as to two of the witnesses on Tuesday, March 15, 2005, at 2:00 p.m., during which oral argument was heard on Sony's motion to exclude Walter Yetnikoff (ECF No. 268) and Graeme Boone (ECF No. 267). For the reasons stated below, Sony's Motion is granted in part and denied in part with respect to Yetnikoff, and granted with respect to Boone.

## I. FACTS

At the heart of this litigation is a basic contractual dispute between Popovich and Sony. Popovich

brought the recording artist Meat Loaf to Sony, and Popovich retained certain rights with respect to any Meat Loaf albums released by Sony. According to Popovich, Sony agreed to place the logo of Popovich's record company, Cleveland Entertainment[1], on certain Sony CDs, and Sony failed to do so. There are two contracts governing the obligations between the parties. The first is a 1977 Agreement between CBS[2] and Popovich:

> 7.05. CBS agrees that with respect to phonograph records comprised exclusively of an Artist's performances recorded hereunder and released during the term hereof, it shall insert a standard production credit . . . on labels of disc albums and singles, and, to the extent that (i) space shall reasonably permit, and (ii) we shall afford such credit to the majority of CBS' associated labels, the labels of tape albums, and on jackets of disc Albums in the United States, Canada, the United Kingdom, France, Germany, Italy, Spain, Japan and Australia, and such labels and jackets shall contain your distinctive trademark or logo, as such trademark or logo is approved by CBS (the "Mark"); provided, however, that the size of such Mark and the particular area on such label or jacket or advertisement onto which CBS places such Mark shall be determined solely by CBS. . . It is specifically understood and agreed that no failure on the part of CBS to comply with its obligations pursuant to this paragraph 7.05 will constitute a material breach of this agreement; in such event, its sole obligation to you by reason of such failure shall be to rectify the error in all such materials prepared after its written receipt of written notice thereof from you.

(1977 Agreement, ¶ 7.05) ("1977 Agreement" or "Paragraph 7.05").

On September 18, 1995, Popovich and Cleveland Entertainment filed a lawsuit against Sony for unpaid royalties due under the 1977 Agreement. To resolve the litigation, Sony, Cleveland Entertainment, and the principals of Cleveland Entertainment entered into a Settlement and Release Agreement on February 17, 1998 (the "1998 Agreement"). The settlement required Sony to pay a substantial sum of

---

[1] The trade name of Cleveland Entertainment is Cleveland International Records ("CIR").

[2] Sony is the successor-in-interest to CBS.

money to Popovich. Additionally, the parties negotiated a provision regarding CIR logo placement:

> 5. Sony Music will continue to place the Cleveland logo (in the design currently used on the tape configuration of "Bat Out of Hell") on albums, CDs, cassettes, and all other forms and configurations of master recordings embodied on the albums entitled "Bat Out of Hell," "Dead Ringer," "Midnight at the Lost and Found," "Hits Out of Hell" and will add such logo to all forms and configurations on which it does not presently appear (including CDs) manufactured by Sony Music after September 1, 1998, provided, however, that Sony Music shall reasonably determine the size and location of such logo.

(1998 Agreement, ¶ 5) ("1998 Logo Requirement"). As part of the 1998 Agreement, the parties also reaffirmed the 1977 Agreement, agreeing that "[e]xcept as otherwise provided in the [Settlement] Agreement, the parties expressly ratify and confirm in all respects the January 1977 Agreement and each and every provision thereof." (1998 Agreement, ¶ 8).

Sony challenges the testimony of two expert witnesses Popovich plans to offer at trial. First, Sony contends that the expert report and testimony of Walter Yetnikoff, the former CEO of Sony, must be stricken. Popovich intends to call Yetnikoff to testify to the scope of Sony's obligations under the 1998 Logo Requirement, whether there was a material breach of the agreement, and whether logo rights are important in the record industry. Second, Sony contends that the expert report and testimony of Graeme Boone, a musicologist, is inadmissible. Popovich intends to call Boone to testify as to the historical importance of Meat Loaf and Popovich, and the impact of having the CIR logo appear on Meat Loaf recordings.

## II. LAW AND ANALYSIS

### A. Expert Testimony Standard

The party offering expert testimony bears the burden of proving its admissibility by a preponderance

of the evidence. *Daubert v. Merrell Dow Pharm. Inc*, 509 U.S. 579, 592 n.10 (1993); 2000 Advisory Notes to Fed. R. Evid 702. Federal Rule of Evidence 702 outlines the basic standard for the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In analyzing any expert's proposed testimony under this rule, the judge performs a gatekeeping function by considering the relevance and reliability of the expert testimony. *E.g., Kumho Tire v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). The Sixth Circuit elaborated on this requirement as follows:

> The relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993). The reliability requirement is designed to focus on the methodology and principles underlying the testimony. *See id.* at 556.

*Greenwell,* 184 F.3d 496-97. Furthermore, the "knowledge" of an expert must be more than personal or subjective belief or "unsupported speculation." *See Daubert,* 509 U.S. at 590.

The court notes, however, that although "the rejection of expert testimony is the exception rather than the rule," trial courts do have broad discretion to decide whether or not to admit expert testimony. *See, e.g.,* 2000 Advisory Committee Notes to Fed. R. Evid. 702; *Hamling v. United States*, 418 U.S. 87 (1974).

### B. Walter Yetnikoff

Yetnikoff's expert report indicates he will testify as to four subjects: (1) whether or not the 1998 Logo Requirement obligates Sony BMG to place the CIR logo on compilations which contain at least one Meat Loaf song from one of the four Meat Loaf albums released by Sony under the 1977 Agreement; (2) whether or not the 1998 Logo Requirement obligates Sony BMG to place the CIR logo on internet downloads or is limited to physical distribution only; (3) whether Sony BMG's failure to place the CIR logo on Meat Loaf albums is a material breach of Sony BMG's contractual obligations; and (4) whether it is important to a record company to have its logo placed on a recording, and if so, why. *See Yetnikoff Report* at 2-3. Sony offers objections as to all four subjects. Sony also objects to Yetnikoff's testimony overall on the grounds that he is unfairly biased against Sony.

1. Scope of 1998 Logo Requirement as to Compilations

Yetnikoff's expert report opines that the 1998 Logo Requirement "clearly and beyond doubt requires the placement of the Cleveland International logo on compilations." *Yetnikoff Report* at 2. However, when questioned during deposition about the basis for this opinion, Yetnikoff admitted that he had not been involved in the negotiation of the 1998 Logo Requirement, had never seen another contract like it during his career in the music industry, that his interpretation was not based on any particular music industry expertise, and that the meaning of all words in the 1998 Logo Requirement had no special meaning in the music industry, except for the word "manufactured." (Yetnikoff Dep. at 128-29, 218-220, 236). For example, Yetnikoff could not describe how his specific background assisted in interpreting the language in the agreements:

> Q: Okay. Help me to understand how I, if I had your musical industry knowledge and experience, would come to the conclusion that, "will add such logo to all forms and configurations on which it does not presently appear,

>  including CDs" somehow means something which is not a form and configurations, two lines above, namely a compilation.
>
>  A: I can't tell you that. I didn't draft it. That's what it means to me. And that's what I think the clear intent is, coupled with the other thing is the exclusive language in the old agreement being taken out. I can't tell you why people write what they write. Who wrote this thing? Do we know? We can ask him or her.
>
>  Q: Is there anything you bring to the table, based on your many years of experience in the music industry, that helps you distinguish between the two uses of the same words "forms and configurations" in the third line and the fifth line so that the second use of the same words includes the concept of compilation albums while the first use clearly does not?
>
>  A: Gestalt.
>
>  Q: And what, in your experience in the music industry, forms your understanding of this gestalt?
>
>  A: Gestalt doesn't have an understanding. It's an over all impression.
>
>  Q: So there's no way you can explain it to the jury or the judge or anyone else, you just know it when you see it?
>
>  A: That's right.

(Yetnikoff Dep. at 218-19.) Further, Yetnikoff admitted that only one word in Paragraph 5 of the 1998 Agreement has special meaning in the music industry:

> Q: Let me be clear, Mr. Yetnikoff, just for the sake of the record. You're telling me that every word in Paragraph 5 means only what it means in English, it has no particular music industry meaning to you, except the word "manufactured," correct?
>
> A: Yes.

(*Id.* at 128-29). The word "manufactured" is not central to the analysis of the compilation issue.

Finally, Yetnikoff admitted that he had never seen another contract similar to the 1998 Logo

- 6 -

Requirement:

> Well, it's pretty clear that this is a unique contract that almost anyone would say is a unique contract . . . I have never seen a contract like the settlement agreement, the part that I've seen. It is extremely unique. It is not a logo deal. It's not a production deal. It's a very unusual, you know, type of contract . . . this is a very, very unique contract, and I stand by that.

(*Id.* at 236.)

The combination of these admissions convinces the court that Yetnikoff is not qualified as an expert to offer his opinion as to the meaning of the 1998 Logo Requirement. His analysis of the contract is admittedly based on plain English words which have no special meaning in the music industry. It is admittedly based on no special music industry experience or knowledge, nor is it based on prior experience in the music industry with similar contracts, because the agreement is "extremely" and "very, very" unique. Popovich argues that Yetnikoff's testimony should be permitted because the "fit" of the expertise to the subject matter need not be exact, citing the following example:

> If one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee. On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

*Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994). In this case, the analogy to the beekeeper is not apt. Unlike the beekeeper, who would testify that all bumblebees take off into the wind, Yetnikoff would testify that this contract does not follow any familiar patterns. As a consequence, his experience does not provide him with any basis to render an opinion on the meaning of the words and phrases on which he seeks to opine.

It is not that Yetnikoff has no expertise at all. The court does not question Yetnikoff's music industry experience; he undoubtedly has a great wealth of knowledge about the business. He is certainly qualified to opine that the words and phrases utilized in the contracts at issue have no unique meaning in the music industry, but that would be of little consequence to Plaintiffs. What would be of consequence to Plaintiffs is that he be allowed to testify as to the meaning of the words and phrases. However, the court concludes that since Yetnikoff admits he is not bringing any of his experience to bear on his interpretation of this particular contract, he is not qualified to opine as an expert on the meaning of the contract. Further, since the contract is in plain English, Yetnikoff's analysis will not "assist the trier of fact to understand the evidence or to determine a fact in issue," because the trier of fact can use their own knowledge of English to interpret the contract. Fed. R. Evid. 702. Yetnikoff may not testify as to his interpretation of the 1998 Logo Requirement as it applies to compilations.

2. Scope of 1998 Logo Requirement as to Internet Downloads

Since this court has already ruled that the 1998 Logo Requirement unambiguously does not apply to Internet downloads, Yetnikoff may not testify as to whether the Internet is covered by the 1998 Logo Requirement. (*See* Feb. 10, 2005 Order, ECF No. 256.)

3. Whether Sony BMG's Actions Constitute a Material Breach

Yetnikoff's written report opines that the limited remedy clause from the 1977 Agreement does not apply to the 1998 Agreement. The court previously stated that the 1977 limited remedy clause unambiguously applied only as to obligations stated in the 1977 Agreement, but not to new obligations laid out in the 1998 Agreement. Therefore, it is unnecessary for Yetnikoff to testify as to the applicability of the limited remedy clause, and whether any breach is "material," since the court has already ruled on these

issues. Yetnikoff may not testify on this subject.

4. Whether Logo Rights are Important

Yetnikoff's expert report opines that "branding and brand recognition is one of the most important assets of any company including a record label," that "logo placement is important to the label," and that its value "cannot be overestimated." (*Yetnikoff Report* at 3.) The report cites two specific examples of how Yetnikoff was involved in business dealings in which the importance of logo rights was evident. Sony contends that Yetnikoff's vague conclusions about the value of logo placement will be of no assistance to the jury in determining damages, because they are not specific as to the actual value of damages for any breach. The court disagrees. As a music industry executive, Yetnikoff is qualified to opine on the value of branding and brand recognition in the record industry. Although he will not testify about the exact value of Popovich's damages, the court finds that his general testimony about the value of logo placement is reliable and will assist the trier of fact, particularly in light of Sony's position that the value of logo placement is minimal. Yetnikoff may testify in response to the specific question of whether logo rights are important assets in the music industry.

5. Yetnikoff's Bias

Sony argues that Yetnikoff is not an independent witness, but a biased witness who harbors bitterness and resentment towards his former employer. According to Sony, Yetnikoff has admitted he has a low opinion of Sony and written a book critical of Sony. While this may be true, the court will permit Yetnikoff to testify on the limited topics outlined above. As a former CEO of Sony, Yetnikoff is uniquely qualified to testify in this case. All experts have some bias, and a jury may take such bias into account when evaluating the credibility of a witness' testimony. *See, e.g., Dunn v. Sears, Roebuck & Co.*, 639 F.2d

1171, 1174 (5th Cir. 1981); *In re Agent Orange Product Liability Litig.*, 611 F.Supp. 1267, 1279-80 (E.D.N.Y. 1985). Sony may cross-examine Yetnikoff using its evidence of bias, but the court finds that it is best to let the jury hear what Yetnikoff has to say and determine the weight and significance of his testimony for itself. The cases Sony cites in support of exclusion on the basis of bias are inapposite, since the courts excluded the witnesses in those cases for multiple reasons, including bias. *Johnston v. United States*, 597 F.Supp. 374, 411 (D.Kan. 1984) (excluding experts because they were not qualified, their analysis was not credible, and they were biased); *Viterbo v. Dow Chemical Co.*, 646 F.Supp. 1420 (E.D. Tex. 1986) (excluding expert report because expert is not qualified and because there is evidence he is biased). The court rejects bias as a reason to exclude Yetnikoff in this case.

### C. Graeme Boone

Sony has also raised challenges to the planned expert testimony of musicologist Graeme Boone. Boone's affidavit indicates he will testify in three areas: (1) the historical importance of Meat Loaf and of his albums recorded with CIR; (2) the importance of Popovich to the existence of the recordings; and (3) the impact on consumers of having the CIR logo on Meat Loaf CDs, cassettes, etc.

<u>1. Historical Importance of Meat Loaf and Popovich</u>

Sony contends that Boone is not qualified to opine on this subject, the subject is not relevant to a fact at issue in the trial, and Boone's opinion is unreliable. Without deciding at this point the relevance of Boone's testimony, the court concludes Boone may not testify as to the historical importance of Meat Loaf because he is not qualified to do so and because it is unclear whether he had any expert knowledge about Meat Loaf prior to being contacted to testify by Popovich.

Plaintiffs present Boone as an expert on rock music. While Boone holds a Ph.D in musicology, his

dissertation and the focus of his study is in classical music, not rock and roll. All but one of his published writings are in classical music, jazz, gospel, or blues. His sole publication in rock and roll is a piece on the Grateful Dead in a book he co-edited called "Understanding Rock." He has not mentioned Meat Loaf or Popovich in any of his writings, and Meat Loaf is not mentioned in the book. (Boone Dep. at 18, 54.) He taught a class on rock and roll twice, most recently in 1993 or 1994, but Meat Loaf was not a part of the curriculum.[3] (*Id.* at 22-23.) In preparation for his expert report, Boone reviewed written materials about Meat Loaf and Popovich prepared for him by Plaintiffs' counsel. He admits he had not even heard of Popovich or CIR before Plaintiffs contacted him. (*Id.* at 37-38.)

Even if the court were to assume his testimony were relevant and that he was a qualified musicology expert on rock and roll, there is no evidence that Boone had prior knowledge of Meat Loaf sufficient to qualify him as an expert on the subject. Boone's expert report may be based on his own prior knowledge of Meat Loaf's role in rock history, or it may be based on what Boone learned from the written materials Popovich gave him prior to his report. If the latter is true, Boone is no expert on Meat Loaf, but merely regurgitating information provided to him by Popovich specifically for trial preparation. The problem the court finds is that Plaintiff has not put forward any evidence to convince the court that Boone had any special knowledge about Meat Loaf and his place in rock history prior to reading the materials Plaintiff provided him.

Plaintiff has not demonstrated that Boone has any specialized knowledge of Meat Loaf or Popovich

---

[3] Plaintiffs' counsel represented that Boone had recently taught a class on rock and roll including Meat Loaf; however, that class commenced after Boone had written his expert report.

outside of these materials, that he did any independent research into Meat Loaf or Popovich, or that he had expertise on which to base his conclusions. To use Plaintiffs' bumblebee analogy again, permitting Boone to testify as to these matters would be akin to permitting a beekeeper to testify about gypsy moths, after having read a book about moths in preparation for his testimony.

A court may exclude expert testimony if it goes beyond the expertise of a witness. *Smelser v. Norfolk S. Ry*, 105 F.3d 301, 305 (6th Cir. 1997). The court does not dispute that while Boone might be an expert in classical music, or even jazz, his expertise on Meat Loaf and Popovich are outside his expertise. In *Ancho v. Pentek Corp.*, 157 F.3d 512 (7th Cir. 1998), the Seventh Circuit upheld the exclusion of a mechanical engineer from testifying about the cause of a workplace injury, finding:

> Just as a qualified and board certified heart surgeon does not possess sufficient knowledge of orthopaedic medicine to render an expert opinion on spine surgery, likewise we agree with the trial court's ruling that a mechanical engineer ... lacks qualifications to give expert testimony about plant configuration. Ancho should have retained a qualified plant engineer to testify at trial and his failure to do so was a mistake in judgment for which he has no one to blame but himself.

*Id.* at 519 (citations omitted). If Plaintiffs had obtained an expert who had more experience in rock and roll history and some prior study or knowledge of Meat Loaf and Popovich, the court would, assuming relevancy, be more inclined to permit such testimony. However, Boone has neither. Boone may not testify as to the historical importance of Meat Loaf and Popovich.

2. Impact of CIR Logo Placement

Sony also contends that Boone's testimony about the impact of logos is outside Boone's area of expertise, not based on any scientific method, and unreliable. The court agrees. Boone's report concludes that "consumers commonly identify the value of labels by their roster of musicians" and "consumers are

- 12 -

commonly aware of, and sensitive to, such logos." (Boone Rep. at 3.) However, in Boone's deposition, he admits that he is not an expert in marketing or the music business:

> Q: Do you consider yourself to be an expert in the business of music?
> A: No.
> Q: That includes the economics of the music industry?
> A: I think that there are some aspects of economics that I have knowledge about. But I would not say that I am an expert in the economics of the music business or music.
> Q: And are you an expert in the promotion of music?
> A: No.

(Boone Dep. at 13-14.) Moreover, Boone admits his is not an expert in logos ("Q: You are not an expert in logos; are you? A: No."). (*Id.* at 89.) Further, the basis of his opinions on consumer awareness of logos is "my experience with records and with people who buy records." (*Id.* at 83.) Boone admits that he has "not studied any quantitative relationship between consumers and their buying habits" and that "[i]t's a perception I have that logos matter to some consumers." (*Id.* at 83, 90.) Boone's subjective opinions on logos and consumer buying habits, based on his own perceptions, are not reliable expert opinions. They are not based on any scientific, technical, or specialized knowledge. Fed. R. Evid. 702. They are not reliable, but improperly based on subjective belief and unsupported foundation. *General Electric Co. v. Joiner*, 522 U.S. 136, 140, 146 (1997). Expert opinions may be based on experience if the experience and preparation is of the kind commonly accepted by those in the field. *Kumho Tire*, 526 U.S. at 151. In this case, Boone is not an expert on logos or consumer preferences, and there has been no showing that he uses any methodology, or that his personal experience is commonly accepted by those who study consumer preferences or logos. Boone's conclusions about consumer preferences and logos are not

admissible; he is not qualified as an expert on logos or consumer preference, and his opinions are based on subjective belief and unsupported foundation and therefore unreliable.

### III. CONCLUSION

For the reasons stated above, Sony's Motion is granted in part and denied in part with respect to Yetnikoff (ECF No. 268), and granted with respect to Boone (ECF No. 267).

IT IS SO ORDERED.

                                                    /S/ SOLOMON OLIVER, JR.
                                                    UNITED STATES DISTRICT JUDGE

May 2, 2005